APPEAL,TYPE–D

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:26−cv−00577−CJN</u>

N. et al v. U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES et al
Assigned to: Judge Carl J. Nichols
Cause: 28:1331 Fed. Question

Date Filed: 02/23/2026
Jury Demand: None
Nature of Suit: 899 Administrative Procedure Act/Review or Appeal of Agency Decision
Jurisdiction: U.S. Government Defendant

**<u>Plaintiff</u>**

**DIEGO N.**                    represented by    **Diane DE Gramont**
NATIONAL CENTER FOR YOUTH LAW
428 13th Street
Ste FL 5
Oakland, CA 94612
510−920−3508
Email: <u>ddegramont@youthlaw.org</u>
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anna Lynn Deffebach**
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
202−320−3403
Email: <u>adeffebach@democracyforward.org</u>
*ATTORNEY TO BE NOTICED*

**Joel L. McElvain**
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
202−935−1082
Email: <u>jmcelvain@democracyforward.org</u>
*ATTORNEY TO BE NOTICED*

**Mishan Wroe**
NATIONAL CENTER FOR YOUTH LAW
428 13th Street
Floor 5
Oakland, CA 94612
510−920−3512

Email: mwroe@youthlaw.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robin F. Thurston**
DEMOCRACY FORWARD
FOUNDATION
P.O. Box 34553
Washington, DC 20043
202−455−9060
Email: rthurston@democracyforward.org
*ATTORNEY TO BE NOTICED*

**Rebecca Ruth Wolozin**
NATIONAL CENTER FOR YOUTH
LAW
818 Connecticut Ave NW
Ste 425
Washington, DC 20006
202−868−4792
Email: bwolozin@youthlaw.org
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**RENESME R.**                          represented by   **Diane DE Gramont**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anna Lynn Deffebach**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joel L. McElvain**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mishan Wroe**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robin F. Thurston**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rebecca Ruth Wolozin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

2

**MARIO C.**                                 represented by   **Diane DE Gramont**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anna Lynn Deffebach**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joel L. McElvain**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mishan Wroe**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robin F. Thurston**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rebecca Ruth Wolozin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**BENITO S.**                                represented by   **Diane DE Gramont**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anna Lynn Deffebach**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joel L. McElvain**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mishan Wroe**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robin F. Thurston**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rebecca Ruth Wolozin**

(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**U.S. DEPARTMENT OF HEALTH**
**AND HUMAN SERVICES**

represented by **Cara Elizabeth Alsterberg**
UNITED STATES DEPARTMENT OF
JUSTICE
P.O. Box 868
Ben Franklin Station
Washington, DC 20044
(202) 532–4667
Email: Cara.E.Alsterberg@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jesse Montes**
DOJ–CIV
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
202–598–3962
Email: jesse.a.montes@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joshua Clayton McCroskey**
DOJ–CIV
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
202–305–1540
Email: joshua.c.mccroskey@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**ROBERT F. KENNEDY, JR.**
*in his official capacity as Secretary of*
*Health and Human Services*

represented by **Cara Elizabeth Alsterberg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jesse Montes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joshua Clayton McCroskey**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**OFFICE OF REFUGEE
RESETTLEMENT**

represented by **Cara Elizabeth Alsterberg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jesse Montes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joshua Clayton McCroskey**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**ANGIE SALAZAR**
*in her official capacity as Acting Director*
*of the Office of Refugee Resettlement*

represented by **Cara Elizabeth Alsterberg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jesse Montes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joshua Clayton McCroskey**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/23/2026 | 1 | COMPLAINT against All DEFENDANTS ( Filing fee $ 405 receipt number ADCDC−12258924) filed by MARIO C., RENESME R., DIEGO N., BENITO S.. (Attachments: # 1 Civil Cover Sheet, # 2 Summons, # 3 Summons, # 4 Summons, # 5 Summons, # 6 Summons, # 7 Summons)(Wolozin, Rebecca) Modified on 2/23/2026 to correct docket text (zjm). (Attachment 1 replaced on 2/23/2026) (zmtm). (Entered: 02/23/2026) |
| 02/23/2026 | 2 | SEALED MOTION to Proceed Under Pseudonym filed by MARIO C., DIEGO N., RENESME R., BENITO S. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order, # 3 Exhibit Table of Pseudonyms)(Wolozin, Rebecca) (Entered: 02/23/2026) |
| 02/23/2026 | 3 | SEALED DOCUMENT filed by MARIO C., DIEGO N., RENESME R., BENITO S. re 1 Complaint, (This document is SEALED and only available to authorized persons.)(Wolozin, Rebecca) (Entered: 02/23/2026) |
| 02/23/2026 | 4 | MOTION to Certify Class by MARIO C., DIEGO N., RENESME R., BENITO S.. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order, # 3 Exhibit List, # 4 Exhibit 1, # 5 Exhibit 2, # 6 Exhibit 3, # 7 Exhibit 4, # 8 Exhibit 5, # 9 Exhibit |

| | | |
|---|---|---|
| | | 6, # 10 Exhibit 7, # 11 Exhibit 8, # 12 Exhibit 9, # 13 Exhibit 10)(Wolozin, Rebecca) (Entered: 02/23/2026) |
| 02/23/2026 | 5 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Diane de Gramont, Filing fee $ 100, receipt number BDCDC–12259964. Fee Status: Fee Paid. by MARIO C., DIEGO N., RENESME R., BENITO S.. (Attachments: # 1 Declaration, # 2 Exhibit, # 3 Text of Proposed Order)(Wolozin, Rebecca) (Entered: 02/23/2026) |
| 02/23/2026 | 6 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Mishan Wroe, Filing fee $ 100, receipt number ADCDC–12260026. Fee Status: Fee Paid. by MARIO C., DIEGO N., RENESME R., BENITO S.. (Attachments: # 1 Declaration, # 2 Exhibit, # 3 Text of Proposed Order)(Wolozin, Rebecca) (Entered: 02/23/2026) |
| 02/23/2026 | 7 | NOTICE of Appearance by Joel L. McElvain on behalf of All Plaintiffs (McElvain, Joel) (Entered: 02/23/2026) |
| 02/23/2026 | 8 | NOTICE of Appearance by Anna Lynn Deffebach on behalf of All Plaintiffs (Deffebach, Anna) (Entered: 02/23/2026) |
| 02/24/2026 | 9 | NOTICE of Appearance by Robin F. Thurston on behalf of MARIO C., DIEGO N., RENESME R., BENITO S. (Thurston, Robin) (Entered: 02/24/2026) |
| 02/24/2026 | 10 | MOTION for Preliminary Injunction by MARIO C., DIEGO N., RENESME R., BENITO S.. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Wolozin, Rebecca) (Entered: 02/24/2026) |
| 03/02/2026 | 11 | MEMORANDUM OPINION AND ORDER: The Court ORDERS that: 1) Plaintiffs' 2 Motion for Leave to File Under Pseudonym and Under Seal is GRANTED IN PART and DENIED IN PART, subject to any further consideration by the United States District Judge to whom this case is randomly assigned; 2) All parties shall use the pseudonyms listed in the Complaint in all documents filed in this action; and 3) Within fourteen days of this Order, Plaintiffs shall file a pseudonymous version of their 2 Motion and any attachments as a Notice to the Court on the public docket and a sealed declaration containing their real names and residential addresses. Signed by Chief Judge James E. Boasberg on March 2, 2026. (lcjeb3) Modified to add memorandum opinion on 3/2/2026 (znbn). (Entered: 03/02/2026) |
| 03/02/2026 | 12 | NOTICE of Appearance by Joshua Clayton McCroskey on behalf of All Defendants (McCroskey, Joshua) (Entered: 03/02/2026) |
| 03/02/2026 | 13 | NOTICE of Appearance by Cara Elizabeth Alsterberg on behalf of All Defendants (Alsterberg, Cara) (Entered: 03/02/2026) |
| 03/02/2026 | 14 | Consent MOTION for Extension of Time to File Response/Reply as to 10 MOTION for Preliminary Injunction *until March 10, 2026* by ROBERT FRANCIS KENNEDY, JR, OFFICE OF REFUGEE RESETTLEMENT, ANGIE SALAZAR, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES. (Attachments: # 1 Text of Proposed Order)(Alsterberg, Cara) (Entered: 03/02/2026) |
| 03/03/2026 | | Case Assigned to Judge Carl J. Nichols. (znmw) (Entered: 03/03/2026) |
| 03/03/2026 | 15 | SUMMONS (6) Issued Electronically as to All Defendants, U.S. Attorney and U.S. Attorney General (Attachments: # 1 Notice and Consent)(znmw) (Entered: 03/03/2026) |
| 03/03/2026 | | MINUTE ORDER. Defendants' 14 Consent Motion for Extension of Time to Respond to Plaintiffs' Motion for Preliminary Injunction is GRANTED. Defendants' shall |

| | | |
|---|---|---|
| | | respond to 10 Plaintiffs' Motion for Preliminary Injunction on or before March 10, 2026. Plaintiffs shall file a Reply on or before March 17, 2026. The Parties shall appear in Courtroom 17 for a hearing on the 10 Motion for Preliminary Injunction at 2:00 p.m. on March 24, 2026. So ORDERED by Judge Carl J. Nichols on 03/03/2026. (lccjn3) (Entered: 03/03/2026) |
| 03/03/2026 | | MINUTE ORDER. The Court having considered the 5 6 Motions for Admission Pro Hac Vice of Diane de Gramont and Mishan Wroe, and it appearing to the Court that the attorneys referenced therein meet the requirements for pro hac vice admission under Local Civil Rule 83.2(e), it is hereby ORDERED that the motions are GRANTED. It is further ORDERED that Diane de Gramont and Mishan Wroe are ADMITTED to practice before the Court pro hac vice. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. So ORDERED by Judge Carl J. Nichols on 03/03/2026. (lccjn3) (Entered: 03/03/2026) |
| 03/04/2026 | 16 | NOTICE of Appearance by Jesse Montes on behalf of All Defendants (Montes, Jesse) (Entered: 03/04/2026) |
| 03/04/2026 | 17 | NOTICE of Appearance by Mishan Wroe on behalf of All Plaintiffs (Wroe, Mishan) (Entered: 03/04/2026) |
| 03/04/2026 | 18 | NOTICE of Appearance by Diane DE Gramont on behalf of All Plaintiffs (DE Gramont, Diane) (Entered: 03/04/2026) |
| 03/06/2026 | 19 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by MARIO C., DIEGO N., RENESME R., BENITO S. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit UNDER SEAL, # 2 Exhibit UNDER SEAL, # 3 Exhibit UNDER SEAL, # 4 Exhibit UNDER SEAL, # 5 Exhibit UNDER SEAL, # 6 Exhibit UNDER SEAL, # 7 Text of Proposed Order)(Deffebach, Anna) (Entered: 03/06/2026) |
| 03/09/2026 | 20 | NOTICE by MARIO C., DIEGO N., RENESME R., BENITO S. re 11 Order,,,, Memorandum & Opinion,,, (Attachments: # 1 Motion for Pseudonyms, # 2 Memorandum in Support, # 3 Text of Proposed Order)(Wroe, Mishan) (Entered: 03/09/2026) |
| 03/09/2026 | 21 | SEALED DOCUMENT filed by MARIO C., DIEGO N., RENESME R., BENITO S. re 11 Order,,,, Memorandum & Opinion,,, (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Declaration of Mishan Wroe, # 2 Exhibit Table of Pseudonyms)(Wroe, Mishan) (Entered: 03/09/2026) |
| 03/10/2026 | 22 | Consent MOTION for Protective Order by MARIO C., DIEGO N., RENESME R., BENITO S.. (Attachments: # 1 Text of Proposed Order)(Deffebach, Anna) (Entered: 03/10/2026) |
| 03/10/2026 | 23 | Memorandum in opposition re 10 MOTION for Preliminary Injunction *in Opposition* filed by ROBERT FRANCIS KENNEDY, JR, OFFICE OF REFUGEE RESETTLEMENT, ANGIE SALAZAR, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES. (Attachments: # 1 Exhibit 1_March 10 2026 Declaration of Toby Biswas, # 2 Exhibit A_February 2024 HHS OIG Report, # 3 Exhibit B_February 2025 Harper Memorandum, # 4 Exhibit C_March 2025 ORR Decision, # 5 Exhibit D_April 2025 ORR Decision, # 6 DIEGO N._Proposed Order Denying PI)(Montes, Jesse) Modified event on 3/11/2026 (znmw). (Entered: 03/10/2026) |

| 03/10/2026 | 24 | Memorandum in opposition to re 4 MOTION to Certify Class filed by ROBERT FRANCIS KENNEDY, JR, OFFICE OF REFUGEE RESETTLEMENT, ANGIE SALAZAR, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES. (Attachments: # 1 Text of Proposed Order)(Alsterberg, Cara) (Entered: 03/10/2026) |
|---|---|---|
| 03/11/2026 | 25 | Unopposed MOTION Replace Documents with Redacted Versions re 24 Memorandum in Opposition, 23 Response to motion,, *[23–1] Biswas Declaration* by ROBERT FRANCIS KENNEDY, JR, OFFICE OF REFUGEE RESETTLEMENT, ANGIE SALAZAR, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES. (Attachments: # 1 Text of Proposed Order, # 2 Exhibit A – Redacted Memorandum in opposition re 10 MOTION for Preliminary Injunction, # 3 Exhibit B – Redacted March 10 2026 Declaration of Toby Biswas, # 4 Exhibit C – Redacted Memorandum in opposition to re 4 MOTION to Certify Class)(McCroskey, Joshua) (Entered: 03/11/2026) |
| 03/11/2026 | 26 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by ROBERT FRANCIS KENNEDY, JR, OFFICE OF REFUGEE RESETTLEMENT, ANGIE SALAZAR, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order, # 2 Unredacted Memorandum in opposition re 10 MOTION for Preliminary Injunction, # 3 Unredacted March 10 2026 Declaration of Toby Biswas, # 4 Unredacted Memorandum in opposition to re 4 MOTION to Certify Class)(McCroskey, Joshua) (Entered: 03/11/2026) |
| 03/12/2026 | 27 | ORDER granting 22 Motion for Protective Order. Signed by Judge Carl J. Nichols on 03/12/2026. (lccjn3) (Entered: 03/12/2026) |
| 03/12/2026 | | MINUTE ORDER. Upon consideration of Plaintiffs' 19 motion for leave to file declarations in support of Plaintiffs' 4 motion for class certification under seal, it is hereby ORDERED that the Motion is GRANTED and the redacted information in ECF Nos. 4–4, 4–5, 4–6, 4–7, 4–10, and 4–11 shall be filed under seal. So ORDERED by Judge Carl J. Nichols on 03/12/2026. (lccjn3) (Entered: 03/12/2026) |
| 03/12/2026 | | MINUTE ORDER. Defendants' 25 unopposed motion to replace documents with redacted versions is GRANTED. The Clerk's Office is directed to replace the restricted PDF at ECF No. 23 with the redacted version of Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for a Preliminary Injunction (attached to Defendants' motion as Exhibit A); to replace the restricted PDF at ECF No. 23–1 with the redacted version of the Declaration of Toby Biswas (attached to Defendants' motion as Exhibit B); and to replace the restricted PDF at ECF No. 24 with the redacted version of Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification (attached to Defendants' motion as Exhibit C). So ORDERED by Judge Carl J. Nichols on 03/12/2026. (lccjn3) (Entered: 03/12/2026) |
| 03/12/2026 | | MINUTE ORDER. Defendants' 26 unopposed motion for leave to file documents partially under seal is GRANTED. The unredacted versions of Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for a Preliminary Injunction, the Declaration of Toby Biswas, and Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification shall remain under seal. So ORDERED by Judge Carl J. Nichols on 03/12/2026. (lccjn3) (Entered: 03/12/2026) |
| 03/12/2026 | 28 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. ANGIE SALAZAR served on 3/5/2026 (Deffebach, Anna) (Entered: 03/12/2026) |
| 03/12/2026 | 29 | |

| | | |
|---|---|---|
| | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. ROBERT FRANCIS KENNEDY, JR served on 3/5/2026 (Deffebach, Anna) (Entered: 03/12/2026) |
| 03/12/2026 | 30 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES served on 3/5/2026 (Deffebach, Anna) (Entered: 03/12/2026) |
| 03/12/2026 | 31 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. OFFICE OF REFUGEE RESETTLEMENT served on 3/5/2026 (Deffebach, Anna) (Entered: 03/12/2026) |
| 03/12/2026 | 32 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 3/5/2026. Answer due for ALL FEDERAL DEFENDANTS by 5/4/2026. (Deffebach, Anna) (Entered: 03/12/2026) |
| 03/12/2026 | 33 | REDACTED DOCUMENT– Memorandum in Opposition to 23 Response to motion by ROBERT FRANCIS KENNEDY, JR, OFFICE OF REFUGEE RESETTLEMENT, ANGIE SALAZAR, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES. (Attachments: # 1 Declaration)(znmw) (Entered: 03/13/2026) |
| 03/12/2026 | 34 | REDACTED DOCUMENT– Memorandum in Opposition re 24 Memorandum in Opposition, by ROBERT FRANCIS KENNEDY, JR, OFFICE OF REFUGEE RESETTLEMENT, ANGIE SALAZAR, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES. (znmw) (Entered: 03/13/2026) |
| 03/12/2026 | 35 | SEALED DOCUMENT (Declarations) filed by MARIO C., DIEGO N., RENESME R., BENITO S.. re 4 Motion to Certify Class,. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Declaration, # 2 Declaration, # 3 Declaration, # 4 Declaration, # 5 Declaration)(znmw) (Entered: 03/13/2026) |
| 03/17/2026 | 36 | REPLY to opposition to motion re 10 Motion for Preliminary Injunction filed by MARIO C., DIEGO N., RENESME R., BENITO S.. (DE Gramont, Diane) (Entered: 03/17/2026) |
| 03/17/2026 | 37 | REPLY to opposition to motion re 4 Motion to Certify Class, filed by MARIO C., DIEGO N., RENESME R., BENITO S.. (Deffebach, Anna) (Entered: 03/17/2026) |
| 03/18/2026 | 38 | NOTICE of Change of Address by Diane DE Gramont (DE Gramont, Diane) (Entered: 03/18/2026) |
| 03/20/2026 | 39 | NOTICE of Change of Address by Mishan Wroe (Wroe, Mishan) (Entered: 03/20/2026) |
| 03/24/2026 | | Minute Entry for proceedings held before Judge Carl J. Nichols: Preliminary Injunction held on 3/24/2026. Motions 4 and 10 ; Taken Under Advisment. Further Opinion and Order to be issued by the Court. Court Reporter: Lisa Edwards. (zcam) (Entered: 03/24/2026) |
| 03/28/2026 | 40 | TRANSCRIPT OF PRELIMINARY INJUNCTION before Judge Carl J. Nichols held on March 24, 2026; Page Numbers: 1–91. Date of Issuance: March 28, 2026. Court Reporter/Transcriber Lisa Edwards, Telephone number (202) 354–3269, Transcripts may be ordered by submitting the Transcript Order Form |

|  |  |  |
|---|---|---|
|  |  | For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 4/18/2026. Redacted Transcript Deadline set for 4/28/2026. Release of Transcript Restriction set for 6/26/2026.(Edwards, Lisa) (Entered: 03/28/2026) |
| 04/06/2026 | 41 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General 3/5/2026. (Deffebach, Anna) (Entered: 04/06/2026) |
| 04/21/2026 | 42 | NOTICE OF SUPPLEMENTAL AUTHORITY by MARIO C., DIEGO N., RENESME R., BENITO S. (Attachments: # 1 Exhibit)(Wroe, Mishan) (Entered: 04/21/2026) |
| 04/30/2026 | 43 | MEMORANDUM OPINION. Signed by Judge Carl J. Nichols on 04/30/2026. (lccjn3) (Entered: 04/30/2026) |
| 04/30/2026 | 44 | ORDER denying 10 Motion for Preliminary Injunction. Signed by Judge Carl J. Nichols on 04/30/2026. (lccjn3) (Entered: 04/30/2026) |
| 05/04/2026 | 45 | MOTION to Dismiss by ROBERT F. KENNEDY, JR, OFFICE OF REFUGEE RESETTLEMENT, ANGIE SALAZAR, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES. (Attachments: # 1 Exhibit A, May 4, 2026 Declaration of Toby Biswas, # 2 Text of Proposed Order)(Alsterberg, Cara) (Entered: 05/04/2026) |
| 05/08/2026 | 46 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 43 Memorandum & Opinion, 44 Order on Motion for Preliminary Injunction by MARIO C., DIEGO N., RENESME R., BENITO S.. Filing fee $ 605, receipt number ADCDC−12409136. Fee Status: Fee Paid. (Deffebach, Anna) (Entered: 05/08/2026) |

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DIEGO N., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 1:26-cv-577-CJN |
| U.S. DEPARTMENT OF HEALTH AND | ) | |
| HUMAN SERVICES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' NOTICE OF APPEAL

Plaintiffs provide notice of their appeal to the United States Court of Appeals for the District of Columbia Circuit from this Court's April 30, 2026 opinion and order, docketed at ECF Nos. 43, 44.

Date: May 8, 2026

Respectfully submitted,

*/s/ Anna Deffebach*

Anna Deffebach (D.C. Bar No. 241346)
Joel McElvain (D.C. Bar No. 448431)
Robin F. Thurston (D.C. Bar No. 1531399)
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
adeffebach@democracyforward.org
jmcelvain@democracyforward.org
rthurston@democracyforward.org

Diane de Gramont*
Mishan Wroe*
National Center for Youth Law
428 13th Street, Floor 5
Oakland, California 94612
(510) 835-8098
mwroe@youthlaw.org

1

ddegramont@youthlaw.org


*Counsel for Plaintiffs*
\* Admitted *pro hac vice*

2

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DIEGO N. *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, <br><br> *Defendants*. | Civil Action No. 1:26-cv-00577 (CJN) |

**ORDER**

This matter is before the Court on Plaintiffs' Motion for Preliminary Injunction, ECF No. 10. For the reasons stated in the accompanying Memorandum Opinion, it is

**ORDERED** that Plaintiffs' motion is **DENIED**.

DATE:  April 30, 2026

_____
CARL J. NICHOLS
United States District Judge

1

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

DIEGO N. *et al.*,

        *Plaintiffs*,

    v.

U.S. DEPARTMENT OF HEALTH AND
HUMAN SERVICES, *et al.*,

        *Defendants*.

Civil Action No. 1:26-cv-00577 (CJN)

## MEMORANDUM OPINION

Federal law requires that, when unaccompanied children arrive at the United States border, they must be transferred to a component of the U.S. Department of Health and Human Services known as the Office of Refugee Resettlement, or "ORR." That office is required by statute to balance two competing priorities. On one hand, ORR must promptly transfer unaccompanied minors into the custody of relatives or other individuals able to act as appropriate custodians. On the other, ORR must verify that potential caregivers will not endanger children entrusted to them, a process which necessarily takes time. ORR cannot release such children to just anyone who seeks custody, but it also cannot indefinitely detain them.

This lawsuit concerns a subset of unaccompanied children in ORR's care. Plaintiffs are unaccompanied minors who were previously released by ORR to an approved sponsor, but who have been again transferred to ORR (as also required by federal law) and are therefore awaiting re-release. They argue that because their sponsors were previously approved as custodians, the Government cannot keep them detained absent a showing that their continued detention is justified. The Government's policy of doing so, Plaintiffs contend, violates their constitutional due process

1

rights and the Administrative Procedure Act.  The Government argues that it does not treat "re-referred" alien children differently than children who enter ORR custody for the first time.  As to both sets of children, the Government argues, ORR is complying with its statutory and regulatory mandate to properly vet would-be sponsors.

Plaintiffs move the Court for a preliminary injunction that would stop the Government from requiring all previously approved sponsors to restart the application process for this set of unaccompanied children.  For the reasons explained below, the Court concludes that Plaintiffs have failed to show that they are entitled to such relief.[1]

## I.    Background

### A.    Statutory and Regulatory Framework

For decades, the Immigration and Naturalization Service, an agency within the Department of Justice, enforced federal immigration law as to adults and children alike.  *See Mestanek v. Jaddou*, 93 F.4th 164, 170–71 (4th Cir. 2024).  But in 2002, Congress enacted the Homeland Security Act, abolishing the INS and transferring most of its functions to three new entities housed within the newly created Department of Homeland Security: U.S. Citizenship and Immigration Services, U.S. Immigration and Customs Enforcement, and U.S. Customs and Border Protection. *Id.*  An exception was made for functions concerning "the care of unaccompanied alien children," which Congress gave to ORR, an agency within the Department of Health and Human Services. 6 U.S.C. § 279(a).  Specifically, Congress required that the Director of ORR would be "responsible for," among other things, "ensuring that the interests of the child are considered in decisions and actions relating to the care and custody of an unaccompanied alien child." *Id.* § 279(b)(1)(B).

---

[1] Plaintiffs seek to represent a class of similarly situated unaccompanied minors, but the Court does not in this memorandum opinion address Plaintiffs' pending motion for class certification. *See* ECF No. 4.

2

Six years later, Congress addressed additional issues concerning unaccompanied alien children through the William Wilberforce Trafficking Victims Protection Reauthorization Act, or "TVPRA."  Pub. L. No. 110-457, 122 Stat. 5044.  Aiming to "enhanc[e] efforts to combat the trafficking of children," Congress required the heads of several agencies to "establish policies and programs to ensure that unaccompanied alien children in the United States are protected from traffickers and other persons seeking to victimize or otherwise engage such children in criminal, harmful, or exploitative activity."  8 U.S.C. § 1232(c)(1).  Congress also required "any department or agency of the Federal Government that has an unaccompanied alien child in custody [to] transfer the custody of such child to the Secretary of Health and Human Services not later than 72 hours after determining that such child is an unaccompanied alien child."  8 U.S.C. § 1232(b)(3).  Federal law defines an unaccompanied alien child as "a child who (A) has no lawful immigration status in the United States; (B) has not attained 18 years of age; and (C) with respect to whom (i) there is no parent or legal guardian in the United States; or (ii) no parent or legal guardian in the United States is available to provide care and physical custody."  6 U.S.C. § 279(g)(2).

Against this statutory backdrop, in 2024 ORR promulgated the Unaccompanied Children Program Foundational Rule, formalizing preexisting ORR procedures.  45 C.F.R. pt. 410 (2024); *Angelica S. v. Dep't of Health & Hum. Servs.*, 786 F. Supp. 3d 158, 166 (D.D.C. 2025).  The Rule states that if ORR determines that "detention of the unaccompanied child is not required either to secure the child's timely appearance before [the Department of Homeland Security] or the immigration court, or to ensure the child's safety or that of others," ORR must release the child to a suitable sponsor.  45 C.F.R. § 410.1201(a).  The Rule requires that potential sponsors apply and undergo vetting by ORR to determine their suitability.  *Id.* § 410.1202(a).  The suitability assessment includes determining the sponsor's ability to care for the child, verifying the sponsor's

3

identity and relationship to the child, and assessing the suitability of the sponsor's home. *Id.* § 410.1202(b).

In addition, ORR "may require such components as . . . verification of the employment, income, or other information provided by the potential sponsor as evidence of the ability to support the child, interviews with members of the household, [and] a home visit or home study." *Id.* § 410.1202(c). Potential sponsors and any adult residents in the potential sponsor's home may also be required to submit their fingerprints for background checks. *Id.* The Rule requires ORR to "assess the nature and extent of the potential sponsor's previous and current relationship with the unaccompanied child," *id.* § 410.1201(d), and to "evaluate" the child's "current functioning and strengths in conjunction with any risks or concerns" related to trafficking, violence, behavioral issues, and other considerations, *id.* § 410.1201(f).

In short, once an unaccompanied alien child enters HHS's custody, ORR must balance two competing priorities. Congress has obligated ORR to "mak[e] placement determinations for all unaccompanied alien children" in its custody, 6 U.S.C. § 279(b)(1)(C), and to ensure these children "are protected from smugglers, traffickers, or others who might seek to victimize or otherwise engage them in criminal, harmful, or exploitive activity," *id.* § 279(b)(2)(A)(ii). But Congress also requires ORR to "promptly" place those children "in the least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(c)(2)(A).

### B.      Factual Allegations and Legal Claims

Plaintiffs are four pseudonymous unaccompanied alien children who were in ORR custody at the time of the filing of this lawsuit. ECF No. 1 (Compl.) ¶¶ 10–13. They allege that although each of them has a sponsor who was previously approved by ORR, ORR refused to release them until those sponsors submitted new applications. *Id.*

4

The first named plaintiff, Diego N., is illustrative. In 2024, he entered the United States as an unaccompanied child and was therefore transferred to ORR custody. ECF No. 4-4 at 3. Following a vetting process, ORR approved Diego N.'s father as a sponsor and released Diego to him in October 2024. ECF No. 23-1 (Biswas Decl.) ¶ 45. One year later, Border Patrol pulled over a car Diego was riding in and, as required by the TVPRA, transferred him to ORR custody. ECF No. 10-1 (Mot.) at 1–2. Although ORR had previously approved Diego's father as a sponsor, it did not release Diego into his custody until his father attended DNA testing and identification verification appointments. *Id.* at 2; ECF No. 36 (Reply) at 9–10. Other declarants similarly allege that they have been detained for months despite having previously approved family sponsors willing and able to receive them back into their homes. *See id.* at 2–3. In some cases, however, a different sponsor applied for custody of a re-referred child than was approved initially. *See* Biswas Decl. ¶¶ 46–47. Plaintiff Renesme R., for example, was initially released to her father in 2023, but upon re-entering ORR custody in 2025, her aunt applied for custody. *Id.* ¶ 46.[2]

Plaintiffs' core contention is that the Trump Administration has created "a hidden new form of family separation" by failing to release them from ORR custody for unacceptably long periods of time. Mot. at 1.[3] Plaintiffs describe the practice as a "blanket policy of disregarding [ORR's] prior sponsorship approval decisions," *id.*, arguing that this policy violates their

---

[2] Renesme R.'s aunt eventually withdrew her application after her father "commenced the sponsorship process following outreach from ORR indicating that he could pursue an expedited sponsorship process." ECF No. 36 (Reply) at 5 n.1.

[3] Plaintiffs propose a class of "all noncitizen minors who are or will be in the custody of HHS and who meet the following criteria: (1) were previously in ORR custody; (2) were approved for release by ORR to a sponsor; (3) who have been or will be re-detained by DHS and re-referred to ORR; and (4) whom ORR has not released to their previously approved sponsor pursuant to ORR's policy requiring the previously approved sponsor to submit a new sponsor application and obtain a new approval for release." Compl. ¶ 80. Because preliminary relief is not warranted, the Court need not at this stage rule on the Plaintiffs' Motion for Class Certification.

constitutional due process rights and the APA.  *Id.* ¶¶ 87–107.  They seek a preliminary injunction that would enjoin ORR from enforcing its "blanket reapplication policy" during the pendency of this litigation.  Mot. at 3.  Plaintiffs also request that the Court, among other things, order ORR to "provide all class members with a hearing before a neutral and detached decision-maker" within seven days of a class member's re-referral to ORR custody or within seven days of the Court's order if the class member is already in custody.  ECF No. 10-2 (Proposed Order) at 2.

## II.    Legal Standard

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).  To prevail, a party seeking preliminary injunctive relief must make a "clear showing that four factors, taken together, warrant relief: likely success on the merits, likely irreparable harm in the absence of preliminary relief, a balance of the equities in its favor, and accord with the public interest." *League of Women Voters v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016) (internal quotations omitted). Where a federal agency is the defendant, the last two factors merge.  *See Am. Immigr. Council v. DHS*, 470 F. Supp. 3d 32, 36 (D.D.C. 2020).

Most federal circuit courts "apply a heightened standard for preliminary relief . . . for injunctions that alter the status quo."  *Singh v. Berger*, 56 F.4th 88, 96 (D.C. Cir. 2022) (citing cases).  While the Court of Appeals has "decline[d] to reformulate the traditional test set out by the Supreme Court in *Winter*," "[p]roperly understood, the public consequences of employing the extraordinary remedy of injunction necessarily include the risk that the relief requested will cause unusual disruption if granted in error."  *Id.* at 96–97 (citation modified).  The movant's burden is thus especially challenging where the movant's "requested injunction is mandatory—that is, where

6

its terms would alter, rather than preserve, the status quo by commanding some positive act."
*Singh v. Carter*, 185 F. Supp. 3d 11, 17 (D.D.C. 2016) (citation modified).

### III.    Likelihood of Success on the Merits

The "first and most important factor" is whether the movants "have established a likelihood of success on the merits." *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014). Plaintiffs have not demonstrated that their due process and APA claims are likely to succeed.[4]

### A.    Procedural Due Process Claim

Plaintiffs argue that ORR's alleged policy of detaining previously released children while their sponsors reapply deprives those children of liberty without procedural due process. Compl. ¶ 88. The "ordinary mechanism" for determining whether a plaintiff was afforded due process "is the test that [the Supreme Court] articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976)." *Hamdi v. Rumsfeld*, 542 U.S. 507, 528–29 (2004) (plurality opinion). Under *Mathews* and its progeny, "the process due in any given instance is determined by weighing 'the private interest that will be affected by the official action' against the Government's asserted interest . . . and the burdens the Government would face in providing greater process." *Id.* at 529 (quoting *Mathews*, 424 U.S. at 335). Although "the analysis is flexible and calls for such procedural protections as the particular situation demands," *Al-Hela v. Biden*, 66 F.4th 217, 229 (D.C. Cir. 2023) (en banc) (citation modified), the "fundamental requirement of due process is the opportunity to be heard at a

---

[4] Of course, to succeed on the merits, "[a] plaintiff must show a likelihood of success encompass[ing] not only substantive theories but also establishment of jurisdiction," including standing to sue. *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015). The Government does not contest Plaintiffs' standing, but the Court has an independent obligation to assure itself that standing exists (and that the Court otherwise has jurisdiction). *See Belmont Mun. Light Dep't v. FERC*, 38 F.4th 173, 185 (D.C. Cir. 2022). The Court is satisfied that Plaintiffs can likely establish standing because Plaintiffs allege cognizable injuries and those injuries are at least partially redressable by a court order, *see Bennett v. Donovan*, 703 F.3d 582, 589–90 (D.C. Cir. 2013), and it perceives no other jurisdictional defect presented by this case.

meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333 (quotations omitted). Procedural due process claims involve a "familiar two-part inquiry: [The Court] must determine whether the plaintiffs were deprived of a protected interest, and, if so, whether they received the process they were due." *Statewide Bonding, Inc. v. Dep't of Homeland Sec.*, 980 F.3d 109, 118 (D.C. Cir. 2020) (quotations omitted).

### 1.    Plaintiffs Assert Legitimate Liberty Interests

Plaintiffs assert three related liberty interests. *See* Mot. at 22–27.  The first is the general right of a child to live with family, including family members beyond one's biological parents. *Id.* at 22–23 (invoking *Troxel v. Granville*, 530 U.S. 57, 65 (2000) and *Moore v. City of E. Cleveland*, 431 U.S. 494, 504–06 (1977)).  The second is the interest in being free from unwarranted imprisonment. *See id.* at 23–24 (arguing that the Due Process Clause "plainly forbids . . . detaining [alien children] in government custody" and requiring "parents or other custodians to undergo lengthy vetting to get their children back").  The third is a more specific interest based on the "legitimate claim of entitlement" established by ORR's first round of sponsorship vetting. *Id.* at 25; *see Goss v. Lopez*, 419 U.S. 565, 573 (1975).  As to that interest, Plaintiffs argue that because ORR has already vetted their sponsors, "restart[ing] the process" by which sponsors are approved each time a child re-enters ORR custody renders "the TVPRA's instruction to place the minor in the least restrictive appropriate setting" largely meaningless. Mot. at 26 (quoting *Saravia v. Sessions*, 905 F.3d 1137, 1143 (9th Cir. 2018)).

Plaintiffs' interests, of course, converge.  At bottom, they argue that ORR is detaining alien children longer than necessary because ORR should re-release children to their prior sponsors. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" the Due Process Clause protects, *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001), and Plaintiffs thus assert a legitimate liberty interest.  But Plaintiffs' interests

8

are limited by their status as both children and illegal aliens.  As to the former, "juveniles, unlike adults, are always in some form of custody, and where the custody of the parent or legal guardian fails, the government may . . . either exercise custody itself or appoint someone else to do so." *Reno v. Flores*, 507 U.S. 292, 302 (1993) (internal quotations and citation omitted).  As to the latter, while "aliens are entitled to the protection of the Due Process Clause," the liberty rights of aliens "are subject to limitations and conditions not applicable to citizens." *Zadvydas*, 533 U.S. at 718 (Kennedy, J., dissenting); *Mathews v. Diaz*, 426 U.S. 67, 79–80 (1976) ("In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens.").  Regardless of the exact scope of Plaintiffs' liberty interest, however, it is not considered in isolation; more relevant is "whether they received the process they were due." *Statewide Bonding*, 980 F.3d at 118.

**2.      Plaintiffs Have Not Established That the Government's Procedures Likely Fail to Meet Due Process Requirements**

"Because the requirements of due process are flexible and call for such procedural protections as the particular situation demands," the Supreme Court has "declined to establish rigid rules and instead ha[s] embraced a framework to evaluate the sufficiency of particular procedures." *Wilkinson v. Austin*, 545 U.S. 209, 224 (2005) (citation modified).  That framework requires evaluating "the Government's asserted interest" and "the burdens the Government would face in providing greater process." *Hamdi*, 542 U.S at 529 (plurality opinion).

The Government asserts an interest in "mak[ing] custody determinations that are in the 'best interests of the child,'" which it reaches "through a rigorous, multi-factored assessment of a child's safety and well-being." ECF No. 23 (Opp.) at 26 (quoting 8 U.S.C. § 1232(c)(2)(A)).  That interest is embodied in both the Trafficking Victims Protection Reauthorization Act—which requires ORR to "make[] a determination that the proposed custodian is capable of providing for

9

the child's physical and mental well-being," 8 U.S.C. § 1232(c)(3)(A)—and the Foundational Rule—which directs ORR to "assess the nature and extent of the potential sponsor's previous and *current* relationship with the unaccompanied child." 45 C.F.R. § 410.1202(d) (emphasis added). An "agency's faithful adherence to its statutory mandate" is a legitimate interest, *Jacksonville Port Auth. v. Adams*, 556 F.2d 52, 59 (D.C. Cir. 1977), and ORR appears to be faithfully following its obligations here. Requiring updated application materials is consistent both with its statutory and regulatory obligations and with the Government's interest in protecting the safety of these children, especially where a significant amount of time has elapsed between a sponsor's initial approval and an unaccompanied child's re-arrest. The named plaintiffs demonstrate the point. Three of them— Renesme R., Mario C., and Benito S.—were readmitted to ORR custody roughly two years after they were initially released to an approved sponsor. *See* Biswas Decl. ¶¶ 46–48. Given that ORR is statutorily obligated to make "an independent finding that [a potential sponsor] has not engaged in any activity that would indicate a potential risk to the child," 8 U.S.C. § 1232(c)(3)(A), ORR surely has an interest in ensuring that even former sponsors have not engaged in potentially risky behavior in the years since their sponsorship applications were approved.[5]

The Government also argues that it "has an interest in preserving its administrative integrity." Opp. at 26. That interest "includes the administrative burden and other societal costs" associated with court-ordered relief, and while "[f]inancial cost alone is not a controlling weight in determining whether due process requires a particular procedural safeguard prior to some administrative decision[,] . . . the Government's interest, and hence that of the public, in conserving

---

[5] The apparent reluctance of some of the named plaintiffs' sponsors to submit updated applications (and the consequent application of *different* sponsors) further supports the Government's point. *See* Biswas Decl. ¶¶ 46–47; *supra* note 2. An initial sponsor's refusal to provide updated information obviously frustrates ORR's ability to "assess the nature and extent of the potential sponsor's . . . current relationship with the unaccompanied child." 45 C.F.R. § 410.1202(d).

scarce fiscal and administrative resources is a factor that must be weighed." *Mathews*, 424 U.S. at 347–48. Here, Plaintiffs request highly specific mandatory relief that the Government avers "would be presumptively burdensome." Biswas Decl. ¶ 39; *cf.* Proposed Order ¶¶ 2–3. Even if that relief is less burdensome than the Government contends, it would surely impose some burden on the Government. And ORR, of course, has an interest in deciding how best to discharge its statutory obligations. *See Bennett v. Donovan*, 703 F.3d 582, 589 (D.C. Cir. 2013) ("[I]t is the prerogative of the agency to decide in the first instance how best to provide relief.").

Given that Plaintiffs and the Government both assert legitimate interests, the more relevant question concerns the risk of erroneous deprivations of Plaintiffs' liberty interests in light of the process the Government is providing. *Mathews*, 424 U.S. at 335. The Government is, of course, already providing process of a kind; indeed, Plaintiffs' concern is that the Government is engaged in *too much* process, and thus that the re-vetting process is taking too long. Plaintiffs therefore request an additional, threshold layer: a hearing before a neutral decisionmaker within seven days of a child re-entering ORR custody, at which ORR would bear the burden of demonstrating by clear and convincing evidence that the child's prior sponsor approval is no longer appropriate. *See* Proposed Order ¶ 3. But Plaintiffs' request is not supported by the TVPRA or the Foundational Rule. Although Plaintiffs are correct that nothing explicitly requires the Government to conduct a second review of potential sponsors, *see Saravia*, 905 F.3d at 1143, nothing in the statute or Rule forbids it either; indeed, the Foundational Rule's directive to assess "previous and current" relationships between children and their sponsors arguably encourages such a requirement. 45 C.F.R. § 410.1202(d).

Further, what due process "fundamental[ly] require[s]" is "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333 (citation modified).

11

While Plaintiffs' detentions last longer than they believe is warranted, their concerns are not going unheard; the record reflects that ORR is processing their sponsors' applications now, and in some cases has already granted them. *See* Reply at 9–10 (noting that Diego N. was released to his father in March 2026). Finally, as discussed in greater detail below, to the extent that Plaintiffs challenge the length of their detentions, Plaintiffs have an alternative avenue to secure an "opportunity to be heard at a meaningful time and in a meaningful manner" through habeas petitions. *Mathews*, 424 U.S. at 333 (citation modified); *see Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam) ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus[.]"). Plaintiffs have thus not shown at this stage that their due process rights are sufficiently threatened to warrant the "extraordinary remedy" of a preliminary injunction. *Sherley*, 644 F.3d at 392.

### B.    APA Claims

Plaintiffs next argue that ORR's alleged reapplication policy violates the APA because the policy contravenes the TVPRA and is arbitrary and capricious. Before addressing the merits of Plaintiffs' APA claims, however, the Court must determine whether APA review is available at all. That involves two questions: first, whether ORR's alleged policy constitutes final agency action, and second, whether an "other adequate remedy in a court" available to Plaintiffs precludes review here. 5 U.S.C. § 704. Plaintiffs' claims are likely barred by the second threshold requirement. Further, even if the Court reaches the merits of the APA claims, Plaintiffs have not shown that those claims are likely to succeed.

#### 1.    Reviewability Under the APA

The APA provides that "final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. To obtain preliminary relief, then,

Plaintiffs must establish that the challenged policy is both final agency action and that Plaintiffs have no other adequate remedy.

        a.        *"Final Agency Action"*

Courts "may review agency action under the APA only if it is 'final.'" *Nat'l Min. Ass'n v. McCarthy*, 758 F.3d 243, 250 (D.C. Cir. 2014) (quoting 5 U.S.C. § 704). The Supreme Court has "distilled from [its] precedents two conditions that generally must be satisfied for agency action to be 'final' under the APA." *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016). "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal quotations and citations omitted). Without final agency action, Plaintiffs "lack a cause of action under the APA." *Soundboard Ass'n v. Fed. Trade Comm'n*, 888 F.3d 1261, 1267 (D.C. Cir. 2018) (quotation omitted).

As to the first prong, the Government argues that because "Plaintiffs point to nothing establishing that [the alleged 'blanket reapplication'] policy exists in its own right," Opp. at 30, the policy cannot have "mark[ed] the consummation of the agency's decisionmaking process." *Bennett*, 520 U.S. at 178. Plaintiffs counter that when ORR "began receiving significant numbers of re-referred children last year," the agency "adopted [a] policy reflexively" of "requir[ing] all prior sponsors to repeat the application process in full in every case of a newly re-referred child." Reply at 18. Plaintiffs' characterization of ORR's practice is likely correct: The Government admits that re-referred aliens undergo the same process as aliens referred to ORR for the first time. But whether this is a final reviewable action is a different question. Agency action "is not ordinarily considered 'ripe' for judicial review under the APA until the scope of the controversy has been reduced to manageable proportions, and its factual components fleshed out." *Lujan v.*

13

*Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990). That is arguably not the case here because, as the Government notes, "Plaintiffs point to nothing establishing that such a policy exists in its own right," they "do not allege when ORR supposedly adopted this policy," and they "do not identify any document or regulatory action taken to adopt the alleged policy." Opp. at 30.

On the other hand, Plaintiffs correctly note that when ORR "began receiving significant numbers of re-referred children last year," it must have been "aware of the Ninth Circuit's holding that the TVPRA does not require ORR to repeat the application process for previously approved sponsors," and thus it "had a choice to make" about how to handle re-referrals. Reply at 18 (citing *Saravia*, 905 F.3d at 1143). Even if ORR adopted a policy of requiring new sponsor applications for all re-referrals "reflexively," that choice would likely mark "the consummation of the agency's decisionmaking process" because it applied immediately to children's cases. Reply at 18; *Bennett*, 520 U.S. at 178.

The next question is whether "legal consequences will flow" from the challenged policy. *Bennett*, 520 U.S. at 178. Automatic detention pending a second sponsor application is a legal consequence. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 755 (1987) (because "liberty is the norm," detention must be justified). The Government argues that those "legal consequences flow to Plaintiffs from the TVPRA and the Foundational Rule," not the challenged policy itself. Opp. at 30. But that is only true if ORR is *required* to utilize the same vetting process for re-referred aliens as initial referrals. If, as the Court discusses below, ORR instead has some discretion in how it handles re-referrals, then it is ORR's decision requiring re-referrals to remain in ORR detention for the duration of a new sponsorship process that is the source of the "immediate legal consequences for Plaintiffs." Reply at 19.

14

In short, although there is uncertainty as to the origin of the challenged policy, Plaintiffs can likely establish that ORR has adopted at least a form of a "blanket reapplication policy" and that this policy constitutes final agency action.

> b.    *"Other Adequate Remedy"*

In addition to the finality requirement, Section 704 also "states that claims under the APA are not available when there is another 'adequate remedy in a court.'" *Trump v J.G.G.*, 604 U.S. 670, 674 (2025) (Kavanaugh, J., concurring) (quoting 5 U.S.C. § 704).  The Government contends that because habeas provides Plaintiffs with an alternative adequate remedy, Plaintiffs are not likely to succeed on their APA claims.  Opp. at 28.  Plaintiffs counter that the APA's adequate remedy requirement was intended "simply to avoid duplicating previously established special statutory procedures for review of agency actions."  *Darby v. Cisneros*, 509 U.S. 137, 146 (1993); Reply at 17.

Plaintiffs have not established that they are likely to prevail on this point.  To be sure, Plaintiffs rightly note that the Supreme Court "has long read [the § 704] limitation narrowly, emphasizing that it 'should not be construed to defeat the central purpose of providing a broad spectrum of judicial review of agency action.'"  *J.G.G.*, 604 U.S. at 687 (Sotomayor, J., dissenting) (quoting *Bowen v. Massachusetts*, 487 U. S. 879, 903 (1988)).  And, as Plaintiffs note, "multiple district courts have adjudicated APA challenges to ORR policies that impact a child's opportunity for release."  Reply at 17.  But the Court of Appeals has instructed that although an alternative remedy will not be adequate under § 704 if the remedy offers only "doubtful and limited relief," *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009), alternative remedies "need not provide relief identical to relief under the APA, so long as it offers relief of the 'same genre.'"  *Id.* (quoting *El Rio Santa Cruz Neigh. Health Ctr. v. Dep't of Health & Hum. Servs.*, 396 F.3d 1265, 1272 (D.C. Cir. 2005)).  "Thus, for example, relief will be deemed adequate 'where a statute affords an

15

opportunity for *de novo* district-court review' of the agency action." *Garcia*, 563 F.3d at 522–23 (quoting *El Rio Santa Cruz*, 396 F.3d at 1272)).

The general federal habeas corpus statute, 28 U.S.C. § 2241, provides Plaintiffs with the "same genre" of remedy as their requested injunction. *El Rio Santa Cruz*, 396 F.3d at 1272. "At its historical core, the writ of habeas corpus [serves] as a means of reviewing the legality of Executive detention." *INS v. St. Cyr*, 533 U.S. 289, 301 (2001). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and "the traditional function of the writ is to secure release from illegal custody." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 117 (2020) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)). In other words, habeas is "the appropriate remedy to ascertain . . . whether any person is rightfully in confinement or not." *Id.* (quoting 3 JOSEPH STORY, COMMENTARIES ON THE CONSTITUTION OF THE UNITED STATES § 1333, p. 206 (1833)).

Habeas is thus not merely "adequate" relief but is likely the most appropriate relief for Plaintiffs. Plaintiffs challenge the propriety of their confinement; in their view, ORR is improperly detaining them by failing to promptly determine whether their prior sponsors are no longer suitable guardians. That is a core habeas concern. *See Thuraissigiam*, 591 U.S. at 121 (noting that "the touchstone for access to the writ" has been "whether the petitioner challenges control of his person") (citation omitted). Plaintiffs insist that they do not seek immediate release but merely a different process to determine whether their continued detention is necessary. Reply at 16. But "immediate physical release [is] not the only remedy under the federal writ of habeas corpus," and Section 2241 "does not deny the federal courts power to fashion appropriate relief other than immediate release." *Peyton v. Rowe*, 391 U.S. 54, 66–67 (1968); *J.G.G.*, 604 U.S. at 672. In other words, because habeas already "affords an opportunity for *de novo* district-court review" of the

16

challenged action, *El Rio Santa Cruz*, 396 F.3d at 1270, Plaintiffs cannot evade Section 704's strictures. They seek a process by which an independent arbiter can determine whether their detention is valid, and habeas provides that process.[6]

Indeed, the two precedents on which Plaintiffs most heavily rely both began with petitions for writs of habeas corpus brought under Section 2241. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 17-cv-03615, ECF No. 1 at *3 (N.D. Cal. 2017) ("This Court has subject matter jurisdiction over a writ of habeas corpus pursuant to Art. I, § 9, cl. 2 of the United States Constitution, 28 U.S.C. § 2241[.]"); *A.N.P.S. v. Salazar*, No. 25-cv-14778, 2025 WL 3707333, at *1 (N.D. Ill. Dec. 22, 2025) ("Before the Court is Petitioner A.N.S.P.'s petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241."). Although the court in *Saravia* "ultimately granted a preliminary injunction on class-wide procedural due process claims, not on habeas grounds," Reply at 17–18, one court's decision to grant wider relief than necessary does not compel future courts to follow suit.[7] Rather, as courts in this Circuit have held before, when a plaintiff's claim "may be brought under habeas corpus," "the plaintiff, in turn, may not bring his challenge under the APA." *Stern v. Fed. Bureau of Prisons*, 601 F. Supp. 2d 303, 305 (D.D.C. 2009) ("recharacteriz[ing]" a plaintiff's APA claim "as a habeas petition under 28 U.S.C. § 2241").

---

[6] Plaintiffs also argue that the alternative habeas avenue is not appropriate because their preferred injunction would not "necessarily imply the invalidity" of their detention. *J.G.G.*, 604 U.S. at 672; Reply at 16, 18. But that is beside the point, as this is not a Section 1983 action requiring the Court to analyze whether Plaintiffs' habeas petitions can circumvent *Heck v. Humphrey*, 512 U.S. 477 (1994). *See generally Olivier v. City of Brandon*, 146 S. Ct. 916 (2026).

[7] *See Trump v. CASA, Inc.*, 606 U.S. 831, 862 (2025) (Thomas, J., concurring) ("Courts must not distort 'the rule that injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.'") (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)); *Whitehouse v. Illinois Central R. Co.*, 349 U.S. 366, 372–73 (1955) (Frankfurter, J., for the Court) (noting that the complexity of a question "admonishes [a court] to observe the wise limitations on [its] function and to confine [itself] to deciding only what is necessary to the disposition of the immediate case").

The case Plaintiffs provided in their post-briefing Notice of Supplemental Authority, ECF No. 42, reinforces the point. In *E.F.E.L. v. Noem et al.*, an unaccompanied alien child was arrested upon his entry into the country, transferred to ORR, released to his brother, re-arrested and transferred back into ORR custody, and detained pending his brother's reapplication. No. 26-CV-02507, 2026 WL 1045550, at *2 (N.D. Ill. Apr. 17, 2026). The plaintiff then brought a habeas petition under Section 2241 alleging that the Government had violated his due process rights and the Trafficking Victims Protection Reauthorization Act. *Id.* at 1. The Court granted the petition, ordering the Government to "effectuate [the plaintiff's] return to the custody of his ORR-designated sponsor" within 72 hours. *Id.* at 6. That was an "adequate remedy" for the plaintiff in *E.F.E.L.*, 5 U.S.C. § 704, and that remedy is similarly adequate for and available to Plaintiffs here.[8]

In short, Plaintiffs' APA claims are not likely to succeed because they likely fail at the threshold. Because individual habeas petitions provide Plaintiffs with an alternative remedy in court—namely, individualized determinations regarding the propriety of their detention—Plaintiffs' claims are likely barred by 5 U.S.C. § 704.

---

[8] *L.V.M. v. Lloyd* is also not dispositive. 318 F. Supp. 3d 601 (S.D.N.Y. 2018). There, a plaintiff successfully challenged an ORR policy that "added a director review step to the UAC [Unaccompanied Alien Child] release process, requiring [the director's] personal approval of release decisions involving [certain] UAC." *Id.* at 608. Finding that the new policy was unsupported by any evidence and contrary to the TVPRA, the court enjoined ORR from enforcing it. *Id.* at 620–21. But the Court denied the plaintiff's further request to issue "an order directing ORR to expedite the processing of reunification requests" because, "[i]n th[o]se circumstances, an order to expedite the processing [would be] not much more than a direction to 'hurry up' and that is not a proper injunction." *Id.* at 621. Plaintiffs here go one step further, requesting what is essentially a "hurry up plus" order that would require ORR not only to process their release to sponsors more rapidly but also to establish new hearing procedures for doing so. *See* Proposed Order at 2–3. Such an injunction is no more "proper" in "these circumstances" than it was in *L.V.M.* 318 F. Supp. 3d at 621.

18

2.      **Plaintiffs Have Not Established That ORR is Likely Acting Contrary to Law**

As to the merits, the APA requires a court to "hold unlawful and set aside agency action" that is "not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. §§ 706(2)(A), (C).  Plaintiffs argue that by "unnecessarily denying and delaying release, ORR's reapplication policy violates the TVPRA's command to promptly place children 'in the least restrictive setting that is in the best interest of the child.'"  Compl. ¶ 96 (quoting 8 U.S.C. § 1232(c)(2)(A)).

Plaintiffs hinge their argument on a combination of statutory and regulatory language and two nonbinding precedents.  The TVPRA and Foundational Rule direct ORR to place each unaccompanied child "in the least restrictive setting that is in the best interest of the child," 8 U.S.C. § 1232(c)(2)(A), and to "release a child from its custody without unnecessary delay" to a suitable sponsor, preferably close family members, 45 C.F.R. § 410.1201(a).  The precedents in turn state that "[n]othing in the TVPRA requires the government to conduct [sponsor application] reviews a second time" and that the TVPRA does not give the Government the right or obligation "to re-detain and hold indefinitely a previously-released [child] to a previously-approved sponsor without any change in circumstance."  Mot. at 33; *Saravia*, 905 F.3d at 1143; *A.N.P.S.*, 2025 WL 3707333, at *6.  But the question is not whether the TVPRA "requires" the Government to follow the course it has chosen.  Rather, to prevail, Plaintiffs must show that ORR's course of action contravenes the TVPRA's requirements.

Plaintiffs do not appear likely to make that showing.  As the Government notes, "the TVPRA is silent as to what should happen when [an unaccompanied alien child] is re-referred to its custody."  Opp. at 32.  That does not necessarily favor the Government because "a statutory ambiguity . . . is not a delegation to anybody, and a court is not somehow relieved of its obligation to independently interpret the statute."  *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400

19

(2024).  But the statute's silence does not cut against the Government either:  Rather, "when a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it." *Id.* at 413.  Plaintiffs do not appear likely to show that ORR is acting outside its statutory authorization.  After all, Congress tasked ORR with the care of unaccompanied alien children, requiring ORR to protect children from "smugglers, traffickers, or others who might seek to victimize" them.  To be sure, Congress also required ORR to "promptly" place those children "in the least restrictive setting that is in the best interest of the child."  6 U.S.C. § 279(b)(2)(A)(ii); 8 U.S.C. § 1232(c)(2)(A).  Requiring sponsors to submit new applications may err more on the former side at the expense of the latter, but in the context of ORR's competing statutory obligations that is the agency's choice to make so long as it comports with other constitutional limits.[9]

Further, the Government is not claiming the right to "hold indefinitely" the re-referred alien children in ORR's custody.  *A.N.P.S.*, 2025 WL 3707333, at *6.  In the Government's view, the requirement that all alien children in its custody, re-referred or not, go through the same process is ORR's way of fulfilling its mandate to ensure that children are released "without unnecessary delay" and engage in "prompt and continuous efforts" towards family reunification while ensuring the child's safety.  *L.V.M. v. Lloyd*, 318 F. Supp. 3d 601, 610 (S.D.N.Y. 2018).  While perhaps a more burdensome process than Plaintiffs would like, that process complies with the agency's directive to "assess the nature and extent of the potential sponsor's previous and *current* relationship with the unaccompanied child."  45 C.F.R. § 410.1202(d) (emphasis added).  Plaintiffs

---

[9] The only constitutional challenge Plaintiffs press in this motion concerns procedural due process, a claim the Court concluded is unlikely to succeed. *See supra* section III.A.

therefore have failed to establish that the purported re-application policy, while perhaps not obligatory, is likely contrary to law.  5 U.S.C. § 706(2).

> ### 3.    Plaintiffs Have Not Established That ORR's Purported Policy Is Likely Arbitrary and Capricious

Finally, the APA provides that courts "shall . . . hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).  "The APA's arbitrary-and-capricious standard requires that agency action be reasonable and reasonably explained." *Fed. Commc'ns Comm'n v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021).  Review under this standard is "deferential, and a court may not substitute its own policy judgment for that of the agency." *Id.*  Rather, a reviewing court "simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *Id.*  The Government argues that to the extent its actions constitute a reviewable agency policy, the policy "simply applies the same congressionally mandated sponsor vetting and release requirements to [initial referrals] as it does to re-referred" alien children.  Opp. at 35.

Whether ORR's treatment of re-referrals can survive arbitrary and capricious review likely hinges on the default rule in re-referral cases.  As both Parties imply, this was not a common issue before 2025:  How to treat re-referred alien children has only become a salient question because of "increased indiscriminate interior immigration enforcement."  Mot. at 7; Opp. at 12 ("[T]he re-referrals began to happen more frequently in the last year[.]").  So while Plaintiffs insist that ORR must "provide a reasoned explanation for the change, display awareness that [it is] changing position, and consider serious reliance interests," Mot. at 35 (quoting *FDA v. Wages & White Lion Invs., LLC*, 604 U.S. 542, 568 (2025)), it is not clear that ORR has departed from a previous policy

21

at all.   Like many institutions, ORR may be just trying to cope with the uptick in interior immigration arrests since the second Trump Administration began.

Plaintiffs argue that "ORR has provided no reasoned justification for systematically disregarding its prior determinations that Plaintiffs' release to their previously vetted and approved sponsors was in each child's best interests." Mot. at 36.  But ORR's process is not "systematically disregarding" its prior determinations regarding specific sponsors because ORR is not calling those prior determinations into question; that is, ORR is not concluding that those determinations were improperly reached at the time they were made.  Rather, by requiring each sponsor to submit up-to-date information, ORR is attempting to ensure that transferring custody to those sponsors *now*, in some cases years after the initial determination of suitability, would serve "the best interest of the child" in the present.   8 U.S.C. § 1232(c)(2)(A).[10]   Put differently, ORR is attempting to "determin[e] that the proposed custodian *is* capable of providing for the child's physical and mental well-being," 8 U.S.C. § 1232(c)(3)(A) (emphasis added), by assessing "the nature and extent of the potential sponsor's previous and *current* relationship with the unaccompanied child." 45 C.F.R. § 410.1202(d) (emphasis added).

Plaintiffs also argue that ORR's policy lacks a "factual basis," failed to acknowledge reliance interests, flunks a cost-benefit analysis, and failed to consider reasonable alternatives. Mot. at 37–39.  But the Court "may not substitute its own policy judgment for that of the agency," and the question is whether ORR has likely "acted within a zone of reasonableness."  *Prometheus*

---

[10] An individual arbitrary and capricious challenge could perhaps succeed upon the *denial* of an application of a previously approved sponsor, as such a denial could constitute an agency action that would need to "display awareness that [ORR] is changing position" and "offer good reasons for the new policy." *Wages & White Lion Invs.*, 604 U.S. at 570 (citation modified).  But that is not the claim that Plaintiffs bring.  Plaintiffs instead challenge ORR's re-application policy on a system-wide basis, alleging that demanding re-applications from everyone is a changed position, even though Plaintiffs admit this issue did not arise prior to 2025.

*Radio Project*, 592 U.S. at 423.  The decision to require previously approved sponsors to resubmit new applications may err on the side of "providing safe and secure placements" at the expense of "prompt[ness]," but the Court cannot say at this stage that ORR's decision is likely so unreasonable that it constitutes arbitrary agency action.  8 U.S.C. § 1232(c)(2)(A).

* * *

To sum up: Plaintiffs must establish that their APA claim is likely to succeed on the merits. To make that showing, Plaintiffs must show at the threshold that they are both challenging final agency action and that they have no other adequate remedies available.  Then, on the merits, they must also show that the challenged policy is either contrary to law or arbitrary and capricious. "But even a tentative adverse conclusion can undermine [Plaintiffs'] likelihood of success," and, "to prevail, [Plaintiffs] must run the table; they face the daunting task of surmounting *all* of these significant obstacles."  *Ohio v. EPA*, 603 U.S. 279, 322 (2024) (Barrett, J., dissenting); *see also Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, 172 F.4th 361, 377 (4th Cir. 2026) (Richardson, J., concurring) ("[J]udges are not exempt from everyday truths about statistical probability, even when acting in equity to assess a party's likelihood of success.").  For the reasons discussed above, faced with each of those obstacles, Plaintiffs have not shown that they are likely to succeed on the merits.

### IV.    Remaining Equitable Factors

The remaining equitable factors ask whether Plaintiffs will "suffer irreparable harm in the absence of preliminary relief," whether "the balance of equities tips in [Plaintiffs'] favor," and whether "an injunction is in the public interest."  *Winter*, 555 U.S. at 374.  Those factors also do not weigh in favor of enjoining the alleged policy.

23

### A.  Irreparable Harm

"[P]laintiffs seeking preliminary relief [must] demonstrate that irreparable injury is likely in the absence of an injunction."  *Id.* at 22.  The Court of Appeals "has set a high standard for irreparable injury," requiring that the harm "must be both certain and great," "actual and not theoretical."  *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (citation omitted).  The moving party must also show "the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm."  *Id.* (citation modified).

Family separation and prolonged detention certainly qualify as irreparable injuries.  *Angelica S.*, 786 F. Supp. 3d at 175; *see also Jacinto-Castanon de Nolasco v. ICE*, 319 F. Supp. 3d 491, 502 (D.D.C. 2018) (determining that family "[s]eparation irreparably harms plaintiffs every minute it persists").  But "irreparable harm, even when demonstrated, may be insufficient on its own to warrant a preliminary injunction."  *Hanson v. District of Columbia*, 120 F.4th 223, 243 (D.C. Cir. 2024), *cert. denied*, 145 S. Ct. 2778 (2025).  Further, Plaintiffs' harms, while serious, are not "beyond remediation" absent a preliminary injunction.  *Chaplaincy*, 454 F.3d at 297.  As noted above, Plaintiffs' harms are largely remediable through individual habeas relief.

### B.     Balance of the Equities and Public Interest

The two remaining factors—the balance of the equities and the public interest—"merge when the Government is the opposing party."  *Nken v. Holder*, 556 U.S. 418, 435 (2009).  These factors do not favor granting a preliminary injunction and are influenced to an extent by the discussion above regarding likelihood of success on the merits.  After all, Plaintiffs argue that ORR "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns" and that "the public interest is served when the government follows the APA's procedural requirements by offering a reasoned explanation for its

24

decisions." Mot. at 41; *Angelica S.*, 786 F. Supp. 3d at 175–76. But that argument assumes that Plaintiffs have demonstrated that they are likely to succeed on the merits, which is not the case.

The scope of Plaintiffs' requested relief also augurs against an injunction. Plaintiffs request that the Court order ORR to implement new procedures involving hearings before "neutral and detached decisionmaker[s]." Proposed Order at 2. But ORR "does not have access to" detached decisionmakers, Opp. at 27, and in any event, such an order would contravene the "judicial deference to the Executive Branch [that] is especially appropriate in the immigration context where officials 'exercise especially sensitive political functions that implicate questions of foreign relations.'" *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) (quoting *INS v. Abudu*, 485 U.S. 94, 110 (1988)). As the Court of Appeals has reiterated, "[b]ecause injunctions can irreparably injure parties, courts must use great caution, granting them only in cases where they are clearly indispensable to the ends of justice." *Hanson*, 120 F.4th at 243 (citation omitted). Plaintiffs have not shown that equitable relief is so clearly indispensable to entitle them to that "extraordinary remedy." *Nken*, 556 U.S. at 428.

## V.      Conclusion

For the foregoing reasons, Plaintiffs are not entitled to a preliminary injunction at this stage of the litigation and based on the present record. A separate Order will issue contemporaneously.

DATE: April 30, 2026

CARL J. NICHOLS
United States District Judge